UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| Sandra Richards, | No. 2:20-cv-02159-KJM-JDP |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| City of Citrus Heights, et al., | |
| Defendants. | |

Sandra Richards alleges the City of Citrus Heights forced her out of the City Police Department because of her age. The City moves to dismiss for failure to state a claim under Rule 12(b)(6) or, in the alternative, for a more definite statement of the claims against it, under Rule 12(e). The court heard these motions and conducted a status (pretrial scheduling) conference on February 5, 2021. Manolo Olaso and Johnny Griffin appeared for Richards, and Nathan Jackson appeared for the defendants. The motion to dismiss is **granted with leave to amend in part**.

I.     ALLEGATIONS

Until April 2020, Sandra Richards was the Support Services Manager at the Citrus Heights Police Department. First Am. Compl. (FAC) ¶¶ 16, 26, ECF No. 5. Over the nearly fourteen years she had that job, she received consistently exceptional performance reviews. *Id.* ¶ 16. In 2014, she even earned the Chief's Award for her good work. *Id.*

/////

1

Richards turned fifty-five in early 2018. *Id.* ¶ 17. Not long after her birthday, the Police Chief began asking about her retirement plans and spoke to her about training a successor. *Id.* She had not discussed retiring, and did not want to retire at fifty-five. *Id.* The chief also mentioned her eventual retirement to others in the Police Department and city management, including the Assistant Chief of Police and City Manager. *See id.* ¶¶ 18, 21. Although Richards did not intend to retire, she does not allege she told anyone she did not want to retire or that she asked the chief or anyone else to stop making plans for her eventual retirement.

After several months, when it became clear to others Richards had no interest in retiring, Richards alleges the Police Chief began a "campaign of harassment and hostility" in an attempt to force her out. *Id.* ¶ 19. Aside from alleging the Chief invented "bogus workplace violations" and undermined her authority, Richards does not explain what happened. *Id.* She does allege, however, that she was eventually disciplined, suspended, placed on paid administrative leave, and investigated for misconduct. *See id.* ¶ 22. As the investigation progressed, the Police Department disclosed a few examples of her alleged misconduct to her. *Id.* She claims these charges were unsupported by evidence, and she argues that even if she had done what the Police Department claimed, those actions would not have qualified as misconduct. *See id.* She also told the Department its investigation was retaliation, but that charge as pled is murky. *Id.* Richards alleges only that she was "opposing age discrimination." *See id.* ¶ 23.

At some point during the Police Department's internal investigation, it required Richards to submit to a psychological fitness evaluation. *See id.* ¶ 24. Although she alleges the evaluation was a form of retaliation for opposing the internal investigation, she does not say whether the evaluation occurred before or after she voiced her claim that the investigation was retaliatory. *See id.* Richards also does not mention the results of the examination in her complaint, and she does not say what the Police Department did with the results, if anything.

Richards further claims the Police Department disclosed unspecified "confidential details" about its investigation and "mischaracterized" the nature of her alleged misconduct in violation of department policy. *See id.* ¶ 25. But again, she does not explain further. *See id.*

/////

The internal investigation ended in April 2020. *Id.* ¶ 26. The Police Department decided to fire her for cause, citing "serious misconduct," "harassment," and "discrimination." *Id.* She claims these charges are not supported by the evidence. *See id.* The city upheld her termination after an administrative hearing. *Id.* She was terminated the same month the investigation ended, April 2020. *Id.*

Richards filed this lawsuit a few months later. *See* Compl., ECF No. 1. The case is now proceeding on her first amended complaint, ECF No. 5. She asserts claims of age discrimination, harassment, and retaliation under both the federal Age Discrimination in Employment Act of 1976 (the ADEA) and the California Fair Employment and Housing Act (the FEHA). *See id.* ¶¶ 27–38. She also asserts a tort claim of wrongful termination in violation of public policy. *See id.* ¶¶ 39–42. She brings all the claims save one against the City only; the exception is her state-law harassment claim, which she asserts against the City Manager, Police Chief, and Assistant Police Chief as well. *See id.* at 8–9.

The defendants have moved to dismiss and for a more definite statement. *See* Mot., ECF No. 6. These motions are fully briefed and the court heard them by videoconference on February 5, 2021. *See* Opp'n, ECF No. 10; Reply, ECF No. 11; Minutes, ECF No. 12.

## II.   LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes these factual allegations are true and draws reasonable inferences from them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Id.* at 679.

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at

678. In the same vein, conclusory or formulaic recitations elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

#### A. Administrative Exhaustion

The City argues this court lacks jurisdiction to hear this case at all. It contends that because Richards did not attach to her complaint copies of her correspondence with state and federal administrative agencies, she has not proven that she exhausted her administrative remedies. *See* Mot. at 12. The court assumes without deciding that this argument is properly characterized as a jurisdictional challenge and thus addresses it at the outset.

The City does not argue the complaint's jurisdictional allegations are false; its challenge is thus a facial attack, as it conceded at hearing. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial jurisdictional attack, the court assumes the complaint's jurisdictional allegations are true. *See id.* Here, those allegations explain when and how Richards exhausted her administrative remedies. *See* FAC ¶¶ 3–9. The court thus denies the City's motion with respect to its jurisdictional arguments.

#### B. Discrimination and Harassment

"The ADEA prohibits an employer from, among other things, 'discharging' an employee who is over forty years of age 'because of' the employee's age." *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (quoting 29 U.S.C. §§ 623(a)(1), 631(a)). The FEHA also "prohibits employers from discharging or dismissing employees over the age of forty based on their age." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017). Both California and federal law use the same "three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination." *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "[T]he plaintiff first bears the burden of establishing a prima facie case, which raises a presumption of discrimination." *Merrick*, 867 F.3d at 1145. The burden then shifts to the employer to rebut this presumption by producing admissible evidence sufficient to

4

show that "its action was taken for a legitimate, nondiscriminatory reason." *Id.* at 1145–46 (quoting *Guz*, 24 Cal. 4th at 355). "If the employer sustains its burden, the presumption established in the first step disappears, and the plaintiff must raise a triable issue suggesting that the employer's proffered reason is mere pretext for unlawful discrimination, or offer other evidence of discriminatory motive." *Id.* at 1146.

This burden-shifting test is "not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).[1] It is an evidentiary standard "for trying claims of discrimination." *Guz*, 24 Cal. 4th at 354. For that reason, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of discrimination under *McDonnell Douglas* to survive a motion to dismiss under Rule 12(b)(6). *Swierkiewicz*, 534 U.S. at 511.

That said, a plaintiff's evidentiary burdens at trial are relevant when a defendant moves to dismiss for failure to state a claim. District courts within this circuit have often looked to the *McDonnell Douglas* elements of a prima facie case when resolving motions to dismiss. *See, e.g.*, *Jinadasa v. Brigham Young Univ.-Hawaii*, No. 14-00441, 2015 WL 3407832, at *3 (D. Haw. May 27, 2015) (noting "the elements of a prima facie case . . . are a useful tool in assessing whether [the plaintiff] meets the requirement in Rule 8(a)" and collecting cases). The Ninth Circuit has also held that a complaint's factual allegations must permit a "plausible" inference that the plaintiff could establish a prima facie case of discrimination at trial. *Sheppard*, 694 F.3d at 1049–50. The court thus considers these elements. For an age discrimination claim, there are four: plaintiffs must show (1) they were at least forty years old, (2) were performing their job satisfactorily, (3) were discharged, and (4) were either "replaced by substantially younger employees with equal or inferior qualifications" or were "discharged under circumstances otherwise 'giving rise to an inference of discrimination.'" *Merrick*, 867 F.3d at 1146 (quoting *Schechner v. KPIX–TV*, 686 F.3d 1018, 1023 (9th Cir. 2012)).

---

[1] Some courts have determined that some holdings in *Swierkiewicz* have been overruled. *See, e.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). But in *Twombly*, the Court explained the consistency of its decision with its holding in *Swierkiewicz*. *See* 550 U.S. at 569–70. This court has declined to hold that the Supreme Court overruled *Swierkiewicz* silently by implication, at least with respect to the holdings at issue here. *See Cervantes v. Stockton Unified Sch. Dist.*, No. 15-00060, 2015 WL 3507416, at *4 & n.3 (E.D. Cal. June 3, 2015).

Here, Richards's allegations do not permit the necessary plausible inference. Although she alleges she was older than forty, was doing exceptional work, and was discharged, her allegations do not permit the court to infer that the Police Department's decision to fire her was based on her age. She does not rely on many of the common methods for proving discriminatory intent. For example, she does not allege younger workers with equal or inferior qualifications kept their jobs or were hired to replace her. *See, e.g.*, *Merrick*, 867 F.3d at 1146; *Sheppard*, 694 F.3d at 1050. Nor does she allege other employees over forty were pushed out of the Police Department or faced similar age-based discrimination. *See, e.g.*, *Cervantes*, 2015 WL 3507416, at *4. She makes no "statistical" allegations. *See Merrick*, 867 F.3d at 1146. As summarized above, she alleges only that a supervisor "began talking to [her] about retiring and training her successors" and mentioned succession plans to others in City Management. *See* FAC ¶ 17. Richards cannot rely on "stray remark[s]" such as these; much less innocuous comments have fallen short of establishing an employer's liability. *See, e.g.*, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918–19 (9th Cir. 1996) (holding supervisor's claim he wanted to "get rid of the old timers" did not suffice); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding in employer's favor despite its employee's comments that company did not "like grey hair" or "want unpromotable fifty-year olds around"); *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1014 (E.D. Cal. 2011) (holding comments suggesting plaintiff "think about retiring" and was "old enough to retire" did not show discriminatory motive). Persistent unwanted questions about retirement may very well make for discriminatory circumstances, but it is not possible to draw that inference here. Richards does not allege she asked her supervisor to stop or told anyone she had no interest in retirement.

Rather than permitting an inference of discrimination, the complaint's allegations suggest a non-discriminatory reason for Richards's termination. According to Richards's complaint, she was disciplined, suspended, investigated, evaluated for psychological fitness, and found to be guilty of "serious misconduct, harassment, and discrimination" before the Police Department decided to terminate her, and she was permitted to contest the Department's findings in an administrative hearing. *See* FAC ¶¶ 19, 22, 25, 26 (quotation marks omitted). Although she

1   alleges the discipline, investigation, and evaluations were all bogus and the charges all
2   unfounded, she offers nothing beyond that assertion to support her claim. *See id.* ¶¶ 19, 22, 25.
3   To be sure, it is conceivable she was being targeted and could prove the discipline, investigation,
4   suspension, and findings of misconduct were all pretext and smear, but in response to a motion
5   under Rule 12(b)(6), she must push her claims "across the line from conceivable to plausible" by
6   making factual allegations. *Twombly*, 550 U.S. at 570. She has not done so at this time.

7       In short, the complaint suggests an "obvious alternative explanation" for Richards's
8   termination, *id.* at 567: The Police Department was concerned about the potential retirement of a
9   high-performing, experienced employee and wanted to ensure continuity, but then misconduct
10  allegations led to an internal investigation, and the allegations were substantiated. "As between
11  that 'obvious alternative explanation' . . . and the purposeful, invidious discrimination [Richards]
12  asks [the court] to infer, discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682
13  (quoting *Twombly*, 550 U.S. at 567). The court thus grants the motion to dismiss the federal and
14  state discrimination claims.

15      The court dismisses Richards's harassment claims for similar reasons. Both California
16  and federal law prohibit harassment based on a person's age. *See Lawler v. Montblanc N. Am.,*
17  *LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*,
18  934 F.2d 1104, 1109 (9th Cir. 1991), *superseded on other grounds as recognized by Dominguez–*
19  *Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005). But here, as explained above,
20  the complaint does not permit the necessary inference that the Police Department was motivated
21  by Richards's age. This reasoning applies equally to Richards's derivative harassment claim
22  under California Government Code section 12940(k), which requires employers to prevent
23  harassment. No claim for failure to prevent discrimination or retaliation can continue if no
24  discrimination or retaliation occurred. *See, e.g.*, *Dickson v. Burke Williams, Inc.*, 234 Cal. App.
25  4th 1307, 1318 (2015).

26      The shortcomings identified above could readily be cured by the addition of concrete
27  factual allegations. Richards's counsel's arguments at hearing also suggest that if her complaint
28  were amended, she could paint a plausible picture of age discrimination. The court grants her

leave to amend her age discrimination and harassment claims. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (district courts should grant leave to amend when "a viable case may be pled").

**C.      Retaliation**

Both federal and California law prohibit employers from retaliating against employees who oppose age discrimination. *See* 29 U.S.C. § 623(d); Cal. Gov't Code § 12940(h). The elements of a retaliation claim under both statutes are effectively the same: plaintiffs must prove they engaged in a protected activity, they suffered an adverse employment action, and a "causal link" connects the protected activity and adverse employment action. *Poland v. Chertoff*, 494 F.3d 1174, 1179–80 (9th Cir. 2007); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

Here, the complaint does not clearly identify which "adverse employment actions" were retaliatory. In her briefing, Richards identifies four candidates. *See* Opp'n at 7.

First, she argues her paid leave of absence was an adverse employment action and was retaliatory. *See id.*; FAC ¶ 20, 22. She does not allege, however, that her pay was reduced, that she lost benefits, or that the conditions of her employment changed for the worse during her paid leave. Courts within this circuit and courts in several other circuits have held that "being placed on paid administrative leave is not an adverse employment action" in similar circumstances. *Gannon v. Potter*, No. 05-2299, 2006 WL 3422215, at *5 (N.D. Cal. Nov. 28, 2006) (collecting authority), *aff'd*, 298 F. App'x 623 (9th Cir. 2008). Only if some specific change makes the leave "reasonably likely" to deter an employee does a paid leave of absence make for an adverse employment action. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1078–79 (9th Cir. 2013) (holding paid leave of absence was adverse employment action because it prevented plaintiff from taking exam, required him to forfeit pay, and prevented him from gaining experience). Richards's retaliation claim cannot rest on her current allegations about her leave of absence.

Second, Richards alleges the Police Department's internal investigation was itself retaliatory. *See* Opp'n at 7. Her factual allegations are too sparse to permit a plausible inference of success on that basis, at least at this point. Again, she does not allege that the terms or

conditions of her employment changed during the investigation. Nor does she claim to have said the Chief's questions were discriminatory before the investigation began. An employer cannot retaliate against unknown opposition. *See, e.g.*, *Yanowitz*, 36 Cal. 4th at 1046 (agreeing employee cannot prove retaliation without "evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination"). And as explained in the previous section, Richards relies on conclusory assertions rather than factual allegations to claim the charges against her were bogus and unsupported by evidence, so the necessary "causal link" is absent.

Third, Richards argues the Police Department retaliated against her by forcing her to submit to an evaluation of her psychological fitness. *See* Opp'n at 7; FAC ¶¶ 24–26. She does not allege, however, that the terms or conditions of her employment changed because of that evaluation. She does not allege the results of the examination were negative or that the Police Department relied on the examination results when it decided to fire her. Nor does she cite legal authority holding that a psychological fitness evaluation is an adverse employment action in and of itself. Courts have instead held that evaluations—even negative evaluations—are not "adverse employment actions" per se. *See, e.g.*, *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000) (summarizing case law in which courts have decided evaluations were not "adverse employment actions" absent some future adverse consequence separate from evaluation itself); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994) (holding negative evaluations were not "adverse employment actions" because there was "no indication in the record that they were used as the basis for any [later] adverse actions"). Richards's retaliation claims cannot succeed based on her current allegations about the psychological fitness exam.

Fourth, Richards alleges she was terminated. FAC ¶ 26. Termination is an adverse action, but Richards's termination followed her alleged opposition to age discrimination by more than nine months. *See id.* ¶¶ 22, 26. That is meaningfully longer than the two- or three-month window that has permitted an inference of retaliatory motive in other cases. *See, e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

/////

As is true for Richards's discrimination claims, these faults in her retaliation claims could readily be cured by the addition of factual allegations to her complaint. The court thus dismisses her retaliation claims with leave to amend as well.

### D.  Termination in Violation of Public Policy

Richards alleges her termination violated fundamental public policies and asserts a claim under *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980). A plaintiff may not assert a *Tameny* claim against a public entity. *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 900 (2008). Richards concedes that is so. Opp'n at 9. She requests leave to amend, however, to assert a *Tameny* claim based on violations of the United States Constitution. *See id.* That claim would not be viable, as she conceded at hearing, in light of the state Court of Appeal's holding in *McAllister v. Los Angeles Unified School District*, 216 Cal. App. 4th 1198, 1219 (2013). The court therefore dismisses her *Tameny* claim without leave to amend. *See Cafasso*, 637 F.3d at 1059 (affirming dismissal without leave to amend because amendment futile).

## IV.  CONCLUSION

The court **grants** the motion to dismiss **with leave to amend in part**, as explained above. The court **denies as moot** the motion for a more definite statement.

The court thus orders as follows:

1. Any further amended complaint must be filed **within fourteen days**. The court declines the City's request for an order requiring Richards to attach copies of her administrative correspondence to any further amended complaint.
2. Initial disclosures as required by Federal Rule of Civil Procedure 26(a) must be completed **within sixty days**.
3. Fact discovery must be completed by **December 9, 2022**.
4. Expert disclosures must be completed by **January 20, 2023**.
5. Rebuttal expert witnesses must be exchanged by **February 17, 2023**.
6. All expert discovery must be completed by **March 17, 2023**.

/////

/////

10

      7.      All dispositive motions, except for motions for continuances, temporary restraining orders or other emergency applications, must be **heard by May 12, 2023**.

      8.      After considering the discussion at hearing, this matter **is referred to the court's Voluntary Dispute Resolution Panel (VDRP) Coordinator, Sujean Park**, for referral to VDRP in sixty days for the convening of a VDRP session to take place in thirty to sixty days thereafter, at which a principal with full settlement authority for each party shall appear.

This case schedule will become final without further order of the court unless objections are filed **within fourteen calendar days of this order**. The schedule, once final, will not be modified except by leave of court upon a showing of good cause.

This order resolves ECF No. 6.

IT IS SO ORDERED.

DATED: March 22, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE