1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SANDRA RICHARDS,                        No.  2:20-cv-02159-DAD-JDP

12              Plaintiff,

13        v.                                 ORDER GRANTING DEFENDANTS'
                                             MOTION TO DISMISS, IN PART, AND
14   CITY OF CITRUS HEIGHTS, et al.,         DENYING DEFENDANTS' MOTION FOR A
                                             MORE DEFINITE STATEMENT
15              Defendants.
                                             (Doc. No. 31)
16

17

18          This matter is before the court on defendants' motion to dismiss certain of plaintiff's

19   claims pursuant to Federal Civil Procedure Rule 12(b)(6), or in the alternative, for a more definite

20   statement pursuant to Federal Civil Procedure Rule 12(e).  (Doc. No. 31.)  On March 14, 2023,

21   defendants' motion was taken under submission on the papers.  (Doc. No. 35.)  For the reasons

22   set forth below, the court will grant defendants' motion to dismiss, in part, and deny defendants'

23   motion for a more definite statement.

24                                    **BACKGROUND**

25          In her operative third amended complaint ("TAC"), plaintiff alleges as follows.  Plaintiff

26   is a 59-year-old woman who was employed as a Support Services Manager ("SSM") in the Police

27   Department ("the Department") for defendant City of Citrus Heights ("the City") until her

28   termination on April 16, 2020.  (Doc. No. 30 at ¶¶ 14–15.)  Plaintiff worked in her role for almost

                                             1

fourteen years and received "exceptional" job performance reviews in the 10 years leading up to her termination. (*Id.* at ¶ 17.)

Defendant Boyd was the Chief of Police for the Department until October 2016, when defendant Lawrence succeeded him in that position and defendant Boyd became City Manager. (*Id.* at ¶ 18.)  Around that time, defendant Lawrence asked plaintiff how long she planned to stay as SSM.  (*Id.*)  Plaintiff, who was 53 years old at the time, advised defendant Lawrence that she planned to stay five to seven more years.  (*Id.*)  There is no mandatory retirement age at the Department for non-peace officers like plaintiff, but Department employees become eligible to draw money from their retirement accounts at age 55.  (*Id.* at ¶ 19.)

In approximately October 2017, defendant Lawrence began speaking to other Department supervisors and Assistant Police Chief Gina Anderson regarding his preference for plaintiff to retire in late 2018 at 55 years of age.  (*Id.* at ¶ 21.)  Defendant Lawrence knew that plaintiff would turn 55 in February 2018 and did not want a 55-year-old SSM, no matter how high-performing. (*Id.*)  Sometimes, defendant Lawrence spoke to others about plaintiff retiring while plaintiff was within earshot or was present in the room.  (*Id.* at ¶ 22.)  Defendant Lawrence did so intentionally in order to "make [plaintiff] feel uncomfortable and to make her colleagues think she was a lame duck with waning workplace influence and authority."  (*Id.*)  The frequency of defendant Lawrence's conversations increased once plaintiff turned 55 in February 2018, and this behavior continued "[t]hroughout the entire year of 2018," happening at least four times a month between February and December 2018.  (*Id.* at ¶¶ 22–23.)  These conversations made plaintiff feel "extremely uncomfortable" and "anxious."  (*Id.*)

At least three of plaintiff's subordinates—all of whom were "substantially younger" than she—told plaintiff that they wanted her job once she left.  (*Id.* at ¶ 24.)  Plaintiff also worked with a four-person IT team who were also "substantially younger" than plaintiff.  (*Id.*)

Once it became clear to defendant Lawrence that plaintiff would not retire on his preferred schedule, defendant Lawrence "began a campaign of harassment and hostility towards [plaintiff] to encourage her to quit, to undermine her authority at work, and to come up with bogus workplace violations in an effort to justify otherwise unjustifiable discipline, suspension, and

1    eventual termination." (*Id.* at ¶ 25.) Defendant Lawrence intended for this activity to force

2    plaintiff to retire because of her age. (*Id.*)

3      In the spring or summer 2018, defendant Lawrence ordered Department personnel to not

4    speak to the City's human resources department ("HR"). (*Id.* at ¶ 26.) Instead, and in

5    contravention of City policy, defendant Lawrence directed employees to bring any complaints to

6    a Department Sergeant rather than to HR. (*Id.*) Shortly thereafter, defendant Lawrence

7    reprimanded plaintiff during an employee meeting for speaking to HR. (*Id.*) Although plaintiff

8    explained that HR had reached out to her regarding a matter unrelated to plaintiff, this interaction

9    with defendant Lawrence caused her to feel intimidated and discouraged from reporting anything

10   to HR, including her concern that defendant Lawrence was pressuring her to leave the

11   Department due to her age. (*Id.*)

12     Beginning in July 2018, defendant Lawrence increasingly spoke to plaintiff in "abrupt,

13   unfriendly tones" and treated her with this hostility "because it became clear to him that she

14   would not retire on his schedule." (*Id.* at ¶ 27.) As a result, plaintiff "constantly felt anxiety and

15   stress at work" and "found it much more difficult to do her job." (*Id.*) Plaintiff "never saw

16   [defendant Lawrence] speak to much younger employees in such a hostile manner." (*Id.*)

17     In mid-August 2018, defendant Lawrence demanded that plaintiff give him all of her

18   computer logins and passwords, despite the City's policy forbidding the sharing of login

19   information. (*Id.* at ¶ 28.) Defendant Lawrence did not make this demand of any other

20   employees, and he did not need plaintiff's logins to access data at the Department. (*Id.*)

21   Defendant Lawrence made this demand of plaintiff because he knew that getting this information

22   would grant him access to her login security questions, which he knew she used for her personal

23   accounts. (*Id.*) Defendant Lawrence "designed this tactic to pressure [plaintiff] to leave the

24   Department" on defendant Lawrence's schedule. (*Id.*) Plaintiff "reluctantly" gave defendant

25   Lawrence her login information. (*Id.*)

26     At an August 31, 2018 meeting with defendant Lawrence and Assistant Police Chief

27   Anderson, defendant Lawrence told plaintiff to "shut up" the moment she entered the meeting

28   room and warned her that she had better "get on board," referring to plaintiff retiring. (*Id.* at

3

¶ 29.)  Plaintiff told them she was not retiring because she needed the job, and the meeting left plaintiff "fearful and upset."  (*Id.*)  Thereafter, defendant Lawrence and Assistant Police Chief Anderson "stepped up their pressure and hostility against" plaintiff.  (*Id.*)

On September 19, 2018, plaintiff's password for her payroll/benefits account had been changed.  (*Id.* at ¶ 30.)  Defendant Lawrence, or someone acting at his direction, had changed the password in an effort to intimidate plaintiff and remind her that he had her passwords.  (*Id.*)  Plaintiff "felt intimidated and anxious because no other employee, particularly much younger employees, had lost control of computer passwords as she had, and she was potentially subject to discipline for not maintaining control of her passwords, as per [City] policy."  (*Id.*)  On November 24, 2018, in order to further intimidate plaintiff and pressure her into retiring, defendant Lawrence reminded plaintiff that he had her passwords by "pulling out an envelope and showing it to her."  (*Id.* at ¶ 31.)

Throughout the first half of 2019, defendant Lawrence "spoke hostilely" to plaintiff and made negative comments about her work performance at least five times per month, despite her continuing to perform "satisfactorily," because he wanted her to retire from the Department.  (*Id.* at ¶ 32.)  Plaintiff sought medical care to help her deal with her mental and emotional stress caused by the hostility and dental care to help her deal with teeth grinding caused by the stress. (*Id.*)

In February 2019, defendant Lawrence asked one of plaintiff's subordinates, who was approximately in their mid-40s, if the subordinate was ready to take up plaintiff's duties.  (*Id.* at ¶ 33.)  The Department, at defendant Lawrence's direction, created a new title for the subordinate and gave the subordinate a raise, and defendant Lawrence solicited negative feedback about plaintiff from the subordinate.  (*Id.*)  Defendant Lawrence "intended to use these solicited negative and critical comments to justify terminating [plaintiff]."  (*Id.*)  Defendant Lawrence set these events in motion because he was preparing to force plaintiff out due to her age and he would need the younger subordinate to take up plaintiff's duties after plaintiff was removed from her position.  (*Id.*)

/////

On June 21, 2019, defendant Lawrence placed plaintiff on paid administrative leave and directed a peace officer to escort her out of the building in full view of Department personnel, which humiliated plaintiff.  (*Id.* at ¶ 34.)  The next day, plaintiff left a message for defendant Boyd, who was the City Manager at that time.  (*Id.* at ¶ 35.)  Defendant Boyd—who was aware that defendant Lawrence wanted plaintiff to retire—returned plaintiff's call and advised her that he would be involved in the determination of her disciplinary action and that she should have an exit plan like he did.  (*Id.*)  Under City policy, defendant Boyd is required to report instances of age discrimination to HR.  (*Id.*)  Defendant Boyd did not report any incidents of suspected age discrimination against plaintiff to HR.  (*Id.*)

In September 2019, the Department "finally" cited examples of plaintiff's alleged misconduct prompting her administrative leave:  engaging in gender-based discriminatory hiring practices, making disparaging remarks about defendant Lawrence that undermined his authority, making disparaging remarks about other employees that adversely affected morale, failing to ensure current certification for law enforcement system users, and making a misrepresentation in a memorandum to defendant Lawrence regarding the training of subordinates.  (*Id.* at ¶ 36.)  In compiling these examples, the Department relied on the "negative and critical comments" defendant Lawrence had solicited from plaintiff's much younger subordinate.  (*Id.*)

Plaintiff denied that she engaged in discriminatory hiring practices, explained that her comments were taken out of context, and explained that she did not even have hiring authority.  (*Id.* at ¶ 37.)  Regarding the alleged disparaging remarks she made, plaintiff's comments were made in connection with how the Department could improve in certain areas, and the comments were made as part of her management duties in explaining how duties could be performed more effectively and efficiently.  (*Id.*)  Plaintiff states that other employees were in charge of system certification and denies that there was any evidence of her making a misrepresentation to defendant Lawrence in a memorandum.  (*Id.*)  Plaintiff "vehemently disagreed with the [Department's] cited examples [of employee misconduct by plaintiff] and voiced her opposition by exclaiming that the internal affairs investigation was retaliatory."  (*Id.* at ¶ 38.)  Nonetheless, /////

5

1    defendant Lawrence "manipulated the internal affairs investigation by ignoring [plaintiff's]

2    defense evidence" and advising investigators to do the same.  (*Id.*)

3         During her paid leave, there were times when plaintiff did not receive her pay via direct

4    deposit, interruptions which caused "financial hardship."  (*Id.* at ¶ 40.)  Defendant Lawrence

5    and/or Assistant Police Chief Anderson at defendant Lawrence's direction "caused these

6    interruptions purposefully to retaliate against [plaintiff] for opposing their wish that she retire at

7    age 55 and for pointing out that her internal affairs investigation was retaliatory."  (*Id.*)

8         Defendant Lawrence also required plaintiff to undergo a psychological evaluation during

9    her leave, which included several hundred multiple choice questions that required plaintiff to

10   divulge personal and confidential information and undergo a two-and-a-half-hour-long interview

11   by a psychologist in which she was asked "personally-invasive questions, including questions

12   delving into childhood trauma and abuse history."  (*Id.* at ¶ 41.)  Prior to the evaluation,

13   defendant Lawrence instructed a Department peace officer to call plaintiff "repeatedly" to tell her

14   he would escort her to the evaluation.  (*Id.*)  In addition, defendant Lawrence imposed the

15   evaluation "without cause," because plaintiff did not display any objective signs of psychological

16   unfitness and no one had complained to defendant Lawrence about plaintiff's psychological

17   fitness.  (*Id.* at ¶¶ 41–42.)  Defendant Lawrence ordered the evaluation to harass and retaliate

18   against plaintiff for her voicing opposition to his actions and opposing her retirement on his

19   schedule.  (*Id.*)

20        On February 25, 2020, Assistant Police Chief Anderson interviewed plaintiff as part of

21   plaintiff's then-ongoing internal affairs investigation, during which plaintiff refuted the

22   allegations against her and provided evidence in support of her assertions.  (*Id.* at ¶ 43.)  Assistant

23   Police Chief Anderson ignored this evidence at defendant Lawrence's instruction.  (*Id.*)  In

24   addition, defendant Lawrence and Assistant Police Chief Anderson leaked confidential details

25   about plaintiff's internal affairs investigation to a Department dispatch supervisor, who then

26   disclosed that information at a regional dispatch manager's meeting.  (*Id.* at ¶ 44.)

27        Because they perceived her to be too old to be SSM, defendant Lawrence and Assistant

28   Police Chief Anderson recommended to defendant Boyd that plaintiff be terminated.  (*Id.* at ¶ 45.)

On April 8, 2020, defendant Boyd advised plaintiff that she was being terminated "for cause" based on purported findings of "serious misconduct" and "harassment and discrimination." (*Id.* at ¶ 46.) Plaintiff exercised her right to a pre-termination hearing and disputed her termination. (*Id.* at ¶ 47.) On April 16, 2020, after the hearing, the City terminated plaintiff, effective immediately. (*Id.*)

Following her termination, defendant Lawrence did not hire a replacement, in part because it is difficult to find a person under the age of 55 who has the experience and knowledge that plaintiff possessed. (*Id.* at ¶ 48.) Instead, he "parceled out" her former duties "to several substantially younger employees (age range approximately 35 to 45)" and distributed her computer duties to the four-person IT team, whose members were "substantially younger than [plaintiff] (age range approximately 30's to 40's [sic])." (*Id.*) Plaintiff asserts that had she been "substantially younger" or under the age of 40, and had not opposed "age discrimination and retaliation," defendant Lawrence would not have placed her on administrative leave, initiated an internal affairs investigation against her, ignored her defense evidence, leaked her confidential information, interrupted her pay, forced her to undergo a psychological fitness evaluation, or terminated her employment. (*Id.* at ¶ 45.)

On June 15, 2020, plaintiff submitted a tort claim to the defendant City. (*Id.* at ¶ 4.) The City rejected plaintiff's tort claim on July 2, 2020. (*Id.* at ¶ 5.) In July 2020, plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint stating that she had experienced age discrimination, retaliation for opposing age discrimination, and termination because of age. (*Id.* at ¶ 6.) Plaintiff received an EEOC right to sue letter on July 29, 2020. (*Id.* at ¶ 7.) Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") on July 29, 2020, alleging age discrimination, retaliation for opposing age discrimination, and termination because of age. (*Id.* at ¶ 8.) Plaintiff received a right to sue letter from DFEH on August 13, 2020. (*Id.* at ¶ 9.)

Plaintiff initiated this lawsuit on October 27, 2020. (Doc. No. 1.) In her operative TAC, plaintiff asserts the following claims: (1) age discrimination in violation the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, against the defendant City; (2) harassment

7

because of age in violation of the ADEA, 29 U.S.C. §§ 621–34, against the defendant City; (3) retaliation for opposing age discrimination/harassment in violation of the ADEA, 29 U.S.C. §§ 621–34, against the defendant City; (4) age discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12940(a), (h), against the defendant City; (5) harassment because of age in violation of the FEHA, California Government Code §§ 12940(j)(1), against defendants City, Lawrence, and Boyd; (6) retaliation for opposing age discrimination/harassment in violation of the FEHA, California Government Code §§ 12940(a), (h), against the defendant City; and (7) failure to prevent discrimination/harassment/retaliation because of age in violation of the FEHA, California Government Code §§ 12940(k), against the defendant City.  (Doc. No. 30 at 16–21, 23.)

On January 18, 2023, defendants filed the pending motion to dismiss plaintiff's second, third, fifth, sixth, and seventh causes of action due to plaintiff's failure to state a cognizable claim, or, in the alternative, for a more definite statement.  (Doc. No. 31.)  On February 1, 2023, plaintiff filed her opposition to the pending motion to dismiss.  (Doc. No. 32.)  Defendants filed their reply thereto on February 13, 2023.  (Doc. No. 34.)

## LEGAL STANDARD

### A.      Motion to Dismiss Pursuant to Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light

most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

In their pending motion to dismiss, defendants argue that plaintiff's second, third, fifth, sixth, and seventh causes of action are subject to dismissal pursuant to Rule 12(b)(6) because plaintiff has failed to state a claim upon which relief can be granted. (Doc. No. 31 at 2.)

**A.      Plaintiff's Harassment Claims**

As noted above, plaintiff brings one harassment claim pursuant to the FEHA against all defendants (claim 5) and one harassment claim pursuant to the ADEA against the defendant City (claim 2). (Doc. No. 30 at 17, 20.)

1.      Plaintiff's FEHA Harassment Claim Brought Against All Defendants

The elements of a FEHA harassment claim are: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of

that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014) (citing *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (1999)).  "Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998).  Rather, "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Id.; see also Roby v. McKesson Corp*., 47 Cal. 4th 686, 706 (2009) ("[H]arassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee.").  "[H]arassment includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996).

a.   *Defendant Boyd*

As an initial matter, plaintiff has failed to sufficiently allege a FEHA harassment claim against defendant Boyd, because none of the alleged sporadic actions taken by defendant Boyd (e.g., telling plaintiff that she should prepare an exit plan in June 2019 and affirming her termination ten months later in April 2020) rise to the level of being "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *See Aguilar*, 21 Cal. 4th at 131 ("[H]arassment cannot be occasional, isolated, sporadic, or trivial[;] rather, the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature.") (citation omitted); *see also Ramirez v. Quad Graphics, Inc.*, No. 5:23-cv-00062-JGB-KK, 2023 WL 3254979, at *7 (C.D. Cal. May 4, 2023); *Saqqa v. San Joaquin County*, No. 2:20-cv-00331 WBS AC, 2021 WL 4123841, at *11 (E.D. Cal. Sept. 9, 2021). Therefore, the court will grant defendants' motion to dismiss plaintiff's FEHA harassment claim brought against defendant Boyd.

/////

1          b.    *Defendant Lawrence*

2          With respect to defendant Lawrence, plaintiff's harassment allegations can be divided into

3    two categories:  (1) allegations regarding personnel decisions that defendant Lawrence made

4    (e.g., criticizing plaintiff's work performance at least five times per month during the first half of

5    2019, initiating and conducting an internal affairs investigation in June 2019, directing a peace

6    officer to escort plaintiff off of the premises in June 2019 when she was placed on administrative

7    leave, ordering plaintiff to undergo a psychological examination in December 2019, directing a

8    peace officer to call plaintiff regarding the psychological evaluation in December 2019,

9    interrupting plaintiff's pay while she was on leave, sharing information about plaintiff's internal

10   affairs investigation in winter 2019 and spring 2020, and terminating plaintiff in April 2020); and

11   (2) allegations regarding actions taken by defendant Lawrence that were not personnel decisions

12   (e.g., mentioning plaintiff's retirement up to four times per month in 2018, reprimanding plaintiff

13   for speaking to HR in the spring or summer of 2018 after HR had reached out to plaintiff about an

14   unrelated matter, telling plaintiff to "shut up" and "get on board" during a meeting in August

15   2018, changing (or directing someone else to change) plaintiff's password to her payroll/benefits

16   account in September 2018, and speaking to plaintiff in a hostile manner at least four times per

17   month in the second half of 2019 and with an unspecified frequency throughout the first half of

18   2019).[1]  (*See* Doc. No. 30 at ¶¶ 22–23, 26–34, 41 68.)

19         As for the first category of alleged harassment by defendant Lawrence, "commonly

20   necessary personnel management actions such as hiring and firing, job or project assignments,

21   office or work station assignments, promotion or demotion, performance evaluations, the

22

23   [1]  Although plaintiff does not specifically point to the following actions as being included in the
24   basis for her harassment claim (*see* Doc. No. 30 at ¶ 68), the court also considers in this second
     category plaintiff's allegations that defendant Lawrence demanded her passwords in August 2018
25   and showed plaintiff an envelope containing her passwords in November 2018.  (*See id.* at ¶¶ 28,
     31.)  Defendants argue that defendant Lawrence's alleged request for plaintiff's passwords is
26   properly construed as a routine management decision (Doc. No. 34 at 6); however, the court is not
     convinced that demanding an employee's login information qualifies as a personnel management
27   decision (particularly in light of plaintiff's contention that the defendant City forbids sharing
     login information (Doc. No. 30 at ¶ 28)), and defendants cite no authority in support of this
28   proposition.

1    provision of support, the assignment or non-assignment of supervisory functions, deciding who

2    will and who will not attend meetings, deciding who will be laid off, and the like, do not come

3    within the meaning of harassment." *Reno*, 18 Cal. 4th at 646–47 (citing *Janken*, 46 Cal. App. 4th

4    at 63–65); *see also Lawler v. Montblanc North America, LLC*, 704 F.3d 1235, 1244 (9th Cir.

5    2013); *Tandon v. GN Audio USA, Inc.*, No. 5:19-cv-00212-EJD, 2021 WL 242916, at *11 (N.D.

6    Cal. Jan. 25, 2021).  While "[t]hese actions may . . . be found discriminatory if based on improper

7    motives, . . . the remedies provided by the FEHA are those for discrimination, not harassment."

8    *Reno*, 18 Cal. 4th at 646–47.  In contrast to discrimination, harassment "consists of actions

9    outside the scope of job duties which are not of a type necessary to business and personnel

10   management." *Id.*  Thus, plaintiff's allegations in this case regarding personnel decisions made

11   by defendant Lawrence are insufficient to state a claim of harassment pursuant to the FEHA.  *See*

12   *Parks v. Bd. of Trustees of Cal. State Univ.*, 813 F. Supp. 2d 1182, 1198 (E.D. Cal. 2011) (noting

13   that internal investigations, suspensions, letters of reprimand, and job assignments are all

14   "conduct that fits squarely under the category of 'personnel management actions'" and thus "do

15   not constitute harassment under FEHA"); *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860,

16   879 (2010) (holding that an employer's statements and personnel decisions concerning plaintiff

17   "do not create a material factual dispute as to harassment because '[h]arassment is not conduct of

18   a type necessary for management of the employer's business or performance of the supervisory

19   employee's job'") (quoting *Reno*, 18 Cal. 4th at 646); *Velente-Hook v. E. Plumas Health Care*,

20   368 F. Supp. 2d 1084, 1103 (E.D. Cal. 2005) (holding that plaintiff's allegations, including her

21   allegation that defendant withheld plaintiff's paycheck in front of her colleagues until plaintiff

22   would agree to discuss undergoing a fitness for duty test, "fail[] to qualify as harassment" because

23   "[m]aking personnel decisions of this kind is fundamentally different from the type of conduct

24   that constitutes harassment").  At most, these personnel decisions can provide only "evidentiary

25   support for a harassment claim by establishing discriminatory animus on the part of the manager

26   responsible . . ., thereby permitting the inference that [other alleged acts of] rude comments or

27   behavior by that same manager was similarly motivated by discriminatory animus." *Roby*, 47

28   Cal. 4th at 763.

1    As for the second category—actions allegedly taken by defendant Lawrence unrelated to

2    personnel decisions—plaintiff's allegations in this regard are likewise insufficient to state a

3    FEHA harassment claim against defendant Lawrence.  As the previously assigned district judge

4    explained in the court's order granting defendants' motion to dismiss plaintiff's first amended

5    complaint, "much less innocuous comments [than those alleged to have been made by defendant

6    Lawrence] have fallen short of establishing an employer's liability" on harassment claims.  (Doc.

7    No. 13 at 6); *see Arnold v. Dignity Health*, 53 Cal. App. 5th 4123, 428 (2020) (concluding that

8    comments made by superiors regarding the plaintiff-employee's age—including not knowing

9    plaintiff was "that old" on more than one occasion, expressing surprise at plaintiff's age, asking

10   plaintiff why she had not retired yet, and asking plaintiff why she was still working— were

11   insufficient to establish discriminatory animus supporting a discrimination claim under FEHA);

12   *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1014 (E.D. Cal. 2011) (holding that

13   comments that plaintiff should "think about retiring," "must be getting up there old enough that

14   [plaintiff] was thinking of retirement," and that plaintiff "had turned fifty five (55) while on

15   medical leave and that he was 'old enough to retire'" were insufficient to establish discriminatory

16   animus); *cf. Reid v. Google, Inc.*, 50 Cal. 4th 512, 536, 545 (2010) (finding that comments that

17   plaintiff was an "old man," an "old fuddy-duddy," "slow," "fuzzy," "sluggish," "lethargic," did

18   not "display a sense of urgency," "lack[ed] energy" and his ideas were "obsolete" and "too old to

19   matter" were not merely irrelevant "stray remarks").  Although plaintiff alleges that defendant

20   Lawrence spoke to her in a hostile manner and told her to "shut up" during a meeting, "[the]

21   FEHA's prohibitions are not a 'civility code' and are not designed to rid the workplace of

22   vulgarity."  *Sheffield v. Los Angeles Cnty. Dep't of Soc. Servs.*, 109 Cal. App. 4th 153, 161

23   (2003); *see also Mesa v. Modern Woodmen of America*, No. 1:06-cv-01055-LJO-TAG, 2007 WL

24   3147036, at *7 (E.D. Cal. Oct. 25, 2007).

25   Moreover, apart from the incident in which defendant Lawrence allegedly told plaintiff to

26   "shut up" and "get on board," in her TAC plaintiff does not elaborate on the substance of any of

27   defendant Lawrence's allegedly hostile remarks, let alone allege that these remarks had anything

28   to do with her age.  *See Parks*, 813 F. Supp. 2d at 1199 ("There is no admissible evidence that

1   shows that the social environment of the workplace had become intolerable because of *racial*

2   *conduct*.") (emphasis added); *Arnold*, 53 Cal. App. At 428 ("Plaintiff did not state which

3   comments, if any of the comments we consider here, were expressed in [an intimidating or

4   aggressive] tone.  If they were, we conclude an aggressive or intimidating tone . . . is only

5   sufficient to raise a weak suspicion of discriminatory animus."); *Thompson*, 186 Cal. App. 4th at

6   877 (finding that plaintiff's racial harassment claim fails because, *inter alia*, the court

7   "question[ed] whether any evidence shows [plaintiff] was subjected to unwelcome racial

8   comments or any other harassing conduct *as a result of* [his] association with or advocacy for

9   protected employees") (internal quotation marks omitted) (emphasis added).  In addition, as noted

10  by defendants, plaintiff never explains in her TAC what defendant Lawrence actually said when

11  he regularly brought up plaintiff's retirement or whether these comments were anything more

12  than discussing plaintiff's potential retirement with others in the context of succession planning.

13  (Doc. No. 31-1 at 14); *see also* Arnold, 53 Cal. App. 5th at 428 (noting that asking plaintiff why

14  she had not retired and commenting that plaintiff was "old" occurred around the time of

15  plaintiff's birthday, which is a "natural and appropriate occasion for discussing a person's age and

16  future plans").

17       "To be actionable [as harassment], the conduct must be extreme."  *Sheffield*, 109 Cal.

18  App. 4th at 161.  While some of the behavior alleged in the TAC (if true) is certainly very

19  regrettable, the court is unable to conclude that plaintiff has sufficiently alleged in the TAC that

20  she was subjected to unwelcome harassment because of her age or that defendant Lawrence's

21  alleged conduct "was sufficiently severe or pervasive to alter the conditions of employment and

22  create an abusive working environment."  *Landucci*, 65 F. Supp. 4d at 703; *see also Lyle v.*

23  *Warner Brothers Television Productions,* 38 Cal. 4th 264, 279 (2006); *Fisher v. San Pedro*

24  *Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989).  Therefore, the court will grant

25  defendants' motion to dismiss plaintiff's FEHA harassment claim against defendant Lawrence.

26  /////

27  /////

28  /////

1          c.      *The Defendant City*

2          All of plaintiff's harassment allegations against the defendant City are comprised of the

3   actions allegedly taken by defendants Boyd and Lawrence.[2]  (*See* Doc. No. 30 at ¶¶ 54, 68.)

4   Thus, for the same reasons that plaintiff has failed to state a cognizable FEHA harassment claim

5   against defendants Boyd and Lawrence, plaintiff has also failed to state a FEHA harassment claim

6   against the defendant City.

7          Accordingly, the court will grant defendants' motion to dismiss plaintiff's fifth cause of

8   action against all defendants for age-based harassment in violation of the FEHA.

9          2.      Plaintiff's ADEA Harassment Claim Brought Against The Defendant City

10         The elements of an ADEA harassment claim are similar to those of a FEHA harassment

11  claim.  *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) ("To determine

12  whether conduct was sufficiently severe or pervasive to violate Title VII, we look at all the

13  circumstances, including the frequency of the discriminatory conduct; its severity; whether it is

14  physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

15  interferes with an employee's work performance.") (internal quotation marks and citation

16  omitted); *Bishop v. Donahoe*, 479 Fed. App'x 55, 57 (9th Cir. 2012)[3] (applying the elements of a

17  Title VII harassment claim to analyze an ADEA harassment claim and holding that the district

18  court "properly granted summary judgment on [plaintiff's] harassment claim because [plaintiff]

19  failed to raise a triable dispute as to whether the alleged conduct was because of his age . . . or

20  sufficiently severe or pervasive to alter the conditions of his employment").

21         Accordingly, for the same reasons that plaintiff has failed to state a cognizable FEHA

22  harassment claim against the defendant City, plaintiff has also failed to state an ADEA

23

24  ───────────────────

    [2]  To the extent that Assistant Police Chief Anderson's actions may be imputed to the defendant
25  City, the court notes that plaintiff's allegations relating to Assistant Police Chief Anderson's
    conduct are more sporadic and less severe than her allegations regarding defendant Lawrence's
26  actions.  *See Aguilar*, 21 Cal. 4th at 131 ("[H]arassment cannot be occasional, isolated, sporadic,
    or trivial.").
27

28  [3]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
    36-3(b).

                                          15

harassment claim against the defendant City.  *See Arn v. News Media Grp.*, No. 2:02-cv-02060-MCE-KJM, 2004 WL 5567289, at *4 n.4 (E.D. Cal. Apr. 30, 2004), *aff'd*, 175 F. App'x 844 (9th Cir. 2006) ("As explained below, the FEHA claims parallel, and are decided using the same principles and precedent as, the federal claims discussed here.  For the same reasons that the FEHA claims fail, summary judgment would have been proper for the ADA, ADEA, and Title VII claims.")  Therefore, the court will dismiss plaintiff's second cause of action for age-based harassment in violation of the ADEA brought against the defendant City.

**B.      Plaintiff's Retaliation Claims**

Plaintiff asserts one FEHA retaliation claim against all defendants (claim 6) and one ADEA retaliation claim against the defendant City (claim 3).  (Doc. No. 30 at 18, 21.)  Defendant seeks the dismissal of both of plaintiff's retaliation claims.  (Doc. No. 31-1 at 16.)

1.      Plaintiff's FEHA Retaliation Claim Brought Against All Defendants

To establish a prima facie case of retaliation under the FEHA, a plaintiff must allege and ultimately show:  (i) that she engaged in a protected activity; (ii) the employer subjected her to an adverse employment action; and (iii) a causal link existed between her protected activity and the employer's action.  *See Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citing *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 814–15 (1999)).

A plaintiff engages in protected activity if she opposes unlawful employment practices when that opposition is based on a "reasonable belief" that the employer's actions are unlawful.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (quoting *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir. 1983)); *see also Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *Dinslage v. City and Cnty. of San Francisco,* 5 Cal. App. 5th 368, 381 (2016); *Lavery-Petrash v. Sierra Nev. Mem'l Hosp.*, No. 2:11-cv-1520-GEB-DAD, 2014 WL 334218, at *5 (E.D. Cal. 2014), *report and recommendation adopted*, 2014 WL 1092195 (E.D. Cal. Mar. 18, 2014).  A plaintiff may establish a causal link between the alleged protected activity and any alleged adverse action via circumstantial evidence, including the employer's knowledge of the protected activity and the proximity in time between the protected action and the adverse employment act.

1    *See Dawson*, 630 F.3d at 936; *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*,

2    212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse decisions are taken within a reasonable

3    period of time after complaints of discrimination have been made, retaliatory intent may be

4    inferred.").  Indeed, courts addressing retaliation cases under the FEHA often consider the

5    temporal proximity between the protected activity and the adverse action.  *See, e.g.*, *Flores v. City*

6    *of Westminster*, 873 F.3d 739, 749–50 (9th Cir. 2017).  In addition, "[t]he knowledge requirement

7    for a causal link can be met by showing:  (1) the relevant decision maker actually knew about the

8    employee's protected activity; or (2) the relevant decision maker acted as the 'cat's paw' of an

9    individual who knew about the protected activity, i.e. the decision maker was influenced into

10   taking the adverse action by an individual who knew about the protected activity." *Rubadeau v.*

11   *M.A. Mortenson Co.*, No. 1:13-cv-00339-AWI-JLT, 2013 WL 3356883, at *10 (E.D. Cal. July 3,

12   2013) (citing *Gunther v. Cnty. of Washington*, 623 F.2d 1303, 1316 (9th Cir. 1979)).

13          Here, defendants argue that plaintiff has not alleged that she engaged in any protected

14   activities and that even if she did engage in any protected activities, there is too lengthy of a time

15   gap between those activities and any resulting actions to permit an inference of retaliation. (Doc.

16   No. 31-1 at 17–18.)  In opposition, plaintiff contends that she engaged in a protected activity

17   when she:  (1) spoke to HR in the spring or summer of 2018, (2) told defendant Lawrence that she

18   was not retiring in August 2018, and (3) called the internal investigation against her "retaliatory"

19   at an unspecified time.  (Doc. Nos. 32 at 22–23; 30 at ¶¶ 26, 29, 38, 40.)

20          The court is not persuaded by plaintiff's arguments that these incidents constitute

21   engagement in "protected activity."  First, plaintiff concedes that when she spoke to HR in the

22   spring or summer of 2018, HR had reached out to her, and their conversation pertained to "a

23   matter not related to her."  (Doc. No. 30 at ¶ 26.)  Plaintiff has also not alleged a causal link

24   between this purportedly protected activity and age-based, retaliatory adverse employment

25   actions.  Thus, even assuming, without deciding, that plaintiff engaged in a protected activity by

26   speaking to HR, it does not follow that any subsequent allegedly retaliatory actions taken by

27   defendants would have been related to plaintiff's age.

28   /////

1    Second, the court agrees with defendants that plaintiff telling defendant Lawrence she was

2    not ready to retire in August 2018 is, as alleged, "too vague to be [considered] a protected

3    activity, [because] that type of remark could naturally and legally arise through a limitless variety

4    of interactions" and does not put the defendant City on notice of conduct that needs to be

5    investigated.  (Doc. No. 31-1 at 18); *see Yanowitz*, 36 Cal. 4th at 1047 ("Although an employee

6    need not formally file a charge in order to qualify as being engaged in protected opposing

7    activity, such activity must oppose activity the employee reasonably believes constitutes unlawful

8    discrimination, and complaints about personal grievances or vague or conclusory remarks that fail

9    to put an employer on notice as to what conduct it should investigate will not suffice to establish

10   protected conduct."); *see also Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1144 (E.D.

11   Cal. 2010) ("'[P]rotected activity' involves some level of opposition to the employer's actions

12   based on the employee's reasonable belief that some act or practice of the employer is unlawful.

13   Further, there must be some evidence that the employer knew that the employee was engaged in

14   activities in opposition to the employer at the time of the claimed retaliatory action.").

15   Third, with respect to plaintiff's conclusory statement that the internal investigation

16   against her was "retaliatory," plaintiff does not allege in the TAC when or to whom she made this

17   statement, or even that she conveyed any belief that she was being mistreated due to her age.

18   (*See* Doc. No. 30 at ¶¶ 38, 40.)  "Standing alone, an employee's unarticulated belief that an

19   employer is engaging in discrimination will not suffice to establish protected conduct for the

20   purposes of establishing a prima facie case of retaliation, where there is no evidence the employer

21   knew that the employee's opposition was based upon a reasonable belief that the employer was

22   engaging in discrimination."  *Yanowitz*, 36 Cal. 4th at 1046.  Thus, plaintiff has not alleged

23   sufficient facts that if proven would show that she engaged in a protected activity when she

24   allegedly stated that the investigation of her was "retaliatory."

25   Accordingly, the court will grant defendants' motion to dismiss plaintiff's FEHA

26   retaliation claim brought against all defendants.

27   /////

28   /////

18

1          2.      Plaintiff's ADEA Retaliation Claim Brought Against the Defendant City

2          The elements of an ADEA harassment claim are similar to those of a FEHA harassment

3   claim.  *See Guz v. Bechtel Nat., Inc.*, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity

4   between state and federal employment discrimination laws, California courts look to pertinent

5   federal precedent when applying our own statutes.").  A plaintiff may establish a prima facie case

6   of retaliation under the ADEA by showing that:  (1) she engaged in a protected activity (i.e., that

7   she protested or otherwise opposed unlawful employment discrimination directed against a

8   protected employee), (2) the employer subjected her to an adverse employment decision, and (3)

9   there was a causal link-between the protected activity and the employer's action.  *See Poland*, 494

10  F.3d at 1179–80; *Lavery-Petrash*, 2014 WL 334218, at *5.

11         Accordingly, for the same reasons that plaintiff has failed to state a cognizable FEHA

12  retaliation claim against defendants, plaintiff has also failed to state an ADEA retaliation claim

13  against the defendant City.  Therefore, the court will grant defendants' motion to dismiss

14  plaintiff's third cause of action for retaliation in violation of the ADEA brought against the

15  defendant City.[4]

16  **C.     Plaintiff's Claim for Failure to Prevent Discrimination, Harassment, and Retaliation**

17         Plaintiff brings her seventh cause of action against the defendant City for failure to

18  prevent discrimination against, harassment of, and retaliation against plaintiff because of age.

19  (Doc. No. 30 at 23.)  To the extent plaintiff asserts a claim for failure to prevent age-based

20  harassment and retaliation, this claim is derivative of her FEHA claims of age-based harassment

21  and retaliation.  *See Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 597 (2017) ("A

22  failure to prevent discrimination claim is a derivative claim—a plaintiff cannot maintain a cause

23  of action for failure to investigate or prevent harassment unless there was actionable

24  harassment."); *Rozga v. 7-Eleven, Inc.*, No. 2:18-cv-07451-SJO-MRW, 2019 WL 6879750, at *9

25  _____

26  [4]  Defendants also argue that plaintiff's FEHA and ADEA harassment and retaliation claims are
    time-barred and that plaintiff's ADEA harassment and retaliation claims must be dismissed
    because plaintiff failed to exhaust her administrative remedies with the EEOC with respect to

27  these claims.  (*Id.*)  Because the court concludes that plaintiff has failed to state claims of
    harassment or retaliation under the FEHA or the ADEA, the court need not reach these additional

28  arguments presented by defendants.  (*See* Doc. Nos. 31-1 at 16, 21; 32 at 17–19).

1  (C.D. Cal. Sept. 17, 2019) ("[A] cause of action under [California Government Code § 12940(k)]

2  is only viable if there is an actionable discrimination and retaliation claim."); *Patel v. Tungsten*

3  *Network, Inc.*, No. 2:20-cv-07603-SB-JEM, 2021 WL 4776348, at *10 (C.D. Cal. Sept. 15, 2021)

4  ("[B]ecause Plaintiff's pay discrimination claims are subject to summary adjudication, Plaintiff's

5  failure to prevent discrimination claim is also not actionable.").

6       Accordingly, because the court is dismissing plaintiff's harassment and retaliation claims

7  brought pursuant to the FEHA, the court will also dismiss plaintiff's FEHA claim for failure to

8  prevent harassment and retaliation because of age.[5]

9  **D.    Leave to Amend**

10      "Courts are free to grant a party leave to amend whenever 'justice so requires,' and

11  requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572

12  F.3d 962, 972 (9th Cir. 2009) (quoting Fed. R. Civ. P 15(a)(2) and *Owens v. Kaiser Found.*

13  *Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  There are several factors a district court

14  considers in determining whether to grant leave to amend, including undue delay, the movant's

15  bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously

16  allowed, undue prejudice to the opposing party, and futility.  *Brown v. Stored Value Cards, Inc.*,

17  953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Of the

18  factors from *Foman*, the court should particularly consider prejudice to the opposing party.  *Id.*;

19  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

20      In her opposition to the pending motion to dismiss, plaintiff once again requests leave to

21  amend in the event that the court grants defendants' motion.  (Doc. No. 32 at 26.)  Notably,

22  however, plaintiff does not advance any arguments regarding her ability to cure any potential

23  deficiencies in her TAC.  The court finds that silence telling.  Plaintiff has already amended her

24  complaint in this action three times.  (Doc. Nos. 1, 5, 14, 30.)  The court has granted two motions

25  to dismiss brought by defendants in this action, and plaintiff has repeatedly failed to cure the

26

---

27  [5]  Because defendants do not seek the dismissal of plaintiff's discrimination claims, the court does
28  not dismiss plaintiff's seventh cause of action to the extent that she asserts a claim for failure to
    prevent age discrimination.

1    pleading deficiencies identified by the court in those rulings.  (*See* Doc. Nos. 13, 29.)  Moreover,

2    the court notes that plaintiff made only minimal changes to her factual allegations between her

3    second amended complaint and the TAC.  (*See* Doc. Nos. 14, 30.)  Thus, the court the court finds

4    that the granting of further leave to amend here would be futile.  Therefore, defendants' motion to

5    dismiss will be granted without leave to amend.

6    **E.        Motion for a More Definitive Statement**

7            In the alternative to their motion to dismiss, defendants also bring a motion for a more

8    definite statement pursuant to Federal Rule of Civil Procedure 12(e).  "A Rule 12(e) motion is

9    proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the

10   claim being asserted, *i.e.*, so vague that the defendant cannot begin to frame a response."  *C.B. v.*

11   *Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1191 (E.D. Cal. 2010).  That is not the case here, and

12   the court therefore will deny defendants' motion for a more definite statement.

13                                            **CONCLUSION**

14           For the reasons stated above:

15           1.        Defendants' motion to dismiss (Doc. No. 31) is granted, in part as follows:

16                     a.        Plaintiff's second, third, fifth, and sixth causes of action are dismissed,

17                               without leave to amend, due to plaintiff's failure to state a claim;

18                     b.        Plaintiff's seventh cause of action, to the extent that claim is based upon

19                               defendants' alleged failure to prevent harassment or retaliation, is

20                               dismissed without leave to amend due to plaintiff's failure to state a claim;

21                               and

22                     c.        Defendants' motion to dismiss plaintiff's seventh cause of action, to the

23                               extent that claim is based upon defendants' alleged failure to prevent age

24                               discrimination, is denied;

25           2.        Defendants' motion for a more definite statement (Doc. No. 31) is denied;

26   /////

27   /////

28   /////

3.     This action proceeds only on:

       a.     Plaintiff's ADEA age discrimination claim brought against the defendant City;

       b.     Plaintiff's FEHA age discrimination claim brought against the defendant City; and

       c.     Plaintiff's FEHA failure to prevent age discrimination claim brought against the defendant City;

4.     The defendant City shall file an answer responding to the remaining claims in this action no later than twenty-one (21) days after the date of entry of this order;

5.     Defendants Boyd and Lawrence are dismissed from this action; and

6.     The Clerk of the Court is directed to update the docket to reflect that defendants Boyd and Lawrence have been terminated as defendants in this action.

IT IS SO ORDERED.

Dated:   **July 27, 2023**                     _Dale A. Droyd_

                                          UNITED STATES DISTRICT JUDGE